UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

     v.                                     Case No. 8:02-cv-2052-T-23MSS

PRATER, *et al.*,

          Defendants.

_____/

## REPORT AND RECOMMENDATION

**THIS MATTER** is before the Court for consideration of Plaintiff, the United States of America's Motion for Summary Judgment Converting Preliminary Injunction to Permanent Injunction (the "Motion") (Dkts. 143 and 144) and Defendants' response thereto (Dkts. 145 and 146). The District Court Judge referred this matter to the Undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 6.01(b) (Dkt. 39). Based on the evidence in the record and being otherwise fully advised, the Undersigned reports and recommends that the Court **GRANT** Plaintiff's Motion, convert the preliminary injunction to a permanent injunction and award the United States its costs.

### I.     Brief Procedural History

Plaintiff, the United States, brought this action for preliminary and permanent injunctive relief pursuant to 26 U.S.C. §§ 6700, 6701, 7401, 7407 and 7408 (2003), against individual Defendants Carel Prater (a/k/a Chad Prater) and Richard Cantwell and corporate Defendants Tax Escape Service and New Found Freedom, among others (collectively "Defendants"), to enjoin them from promoting allegedly abusive tax-avoidance schemes based on the so-called "§ 861 argument," a meritless position that domestic income is not subject to the federal income tax, and from making

other false and fraudulent representations regarding tax laws.

Plaintiff alleges, <u>inter alia</u>, that Defendants prepared, promoted and marketed tax-avoidance schemes (through seminars, newspaper advertisements, a book and a website) purporting to exempt Defendants' clients from federal income taxation and advising clients how to conceal their assets and income from the Internal Revenue Service (the "IRS") (Dkt. 1).  On November 7, 2002, Plaintiff moved this Court for issuance of a preliminary injunction (Dkt. 2).  On December 19, 2002, this Court entered an Order granting Plaintiff's preliminary injunction request finding that Defendants' conduct violated the Internal Revenue Code (the "IRC"), specifically 26 U.S.C. §§ 6700, 6701, 6694 and 6695 (Dkt. 23).  Defendants did not appeal the entry of the preliminary injunction.  Now, Plaintiff moves this Court for summary judgment converting the preliminary injunction into a permanent injunction (Dkts. 143 and 144), and Defendants oppose that motion (Dkts. 145 and 146).

Plaintiff claims that summary judgment is appropriate in this case because:

> There are no genuine issues of material fact in this case.  Defendants did not dispute the factual allegations in the United States' motion for preliminary injunction, but instead argued their frivolous interpretation of IRC § 861. They introduced no evidence at the preliminary injunction hearing other than testimony regarding their § 861 argument.  They admitted the salient allegations in the United States' complaint regarding Prater's book and website, their "*nihil dicit* judgment" scam, their trust and limited liability corporation scams, their withholding tax scam, their "Pre-Paid Tax Solution" scam, and their letters to the IRS.  While they denied in their answer that they prepared federal income tax returns and amended returns, they produced no evidence to rebut the United States' declarations and exhibits showing that they do prepare returns and amended returns.

(Dkt. 144, pp. 2-3 (internal citations omitted)).

Plaintiff claims further that it is entitled to a permanent injunction based on the findings of fact made in support of the preliminary injunction because these findings clearly establish the United States' entitlement to a permanent injunction under IRC §§ 7407, 7408 and 7402(a).  Plaintiff also

claims that:

> Despite the preliminary injunction, the United States continues to suffer irreparable injury, as Prater and his associated entities have ignored the preliminary injunction and continued to promote their abusive tax schemes . . . [and] the United States has no adequate remedy at law to halt defendants' continued interference with the administration of the internal revenue laws. The only other civil remedy available is the imposition of penalties under IRC §§ 6700, 6701, 6694, and 6695.  As Prater has been undeterred by the monetary sanctions the Court entered against him for his contempt, there is no reason to expect that penalties will stop him.  Rather, a permanent injunction is necessary.

(Dkt. 144 at 5 (internal citations omitted)).

In the "Proposed Order" attached to its Motion, the United States sets forth twenty-one proposed findings of fact (Dkt. 144). These proposed findings of fact are nearly identical to the findings of fact set forth by the District Court's Preliminary Injunction Order (Dkt. 23) with the following exceptions: in paragraph 18 the term "has prevailed" is substituted for "will likely prevail;" the word "permanent" is substituted for "preliminary" throughout; certain footnotes or portions thereof have been deleted; and paragraph 21 has been added.  The proposed findings of fact, as discussed below, support Plaintiff's position that summary judgment is appropriate in this case.

Defendants do not contest the United States' allegations or attempt to refute any of the proposed findings of fact by the submission of contravening affidavits or argument.   Instead, Defendants challenge the Court's "territorial jurisdiction," as they have in the past (Dkt. 19) and also claim that because there is no "basis for the original complaint claiming violation of the 'Income Tax' law sections identified . . . there can be no legal and lawful basis to grant a summary order of permanent injunction" (Dkt. 145 at 4).  Finally, Defendants demand that the preliminary injunction be lifted and that the Court "[o]rder an Evidentiary Hearing" where monetary damages to Defendants can be determined and where evidence can be presented to permit the Court to determine

meaningful sanctions to be applied to the "offending Agencies and its [sic] agents" (Dkt. 145 at 4).

## II.    Standards for Summary Judgment and Permanent Injunction

A Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P 56(c); see also Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co., 362 F.2d 1317, 1318 (11th Cir. 2004)(stating that summary judgment is appropriate where there are no genuine issues of material fact).

The burden of establishing the absence of a genuine issue of material fact lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The "movant bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record that] it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 323. To discharge this burden, the movant must demonstrate to the Court that there is an absence of evidence to support the nonmoving party's case. Id. at 325. However, after the movant has met its burden under Rule 56(c), the burden of production shifts and the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). According to Fed.R.Civ.P. 56(c), the non-movant "**may not rest upon the mere allegations or denials of the adverse party's pleadings, but rather must provide the Court with "specific facts showing that there is a genuine issue for trial.**" Fed.R.Civ.P. 56(c); Matsushita, 474 U.S. at 587 (emphasis added).

Although the findings of fact made in support of a preliminary injunction are not controlling

at a later hearing for a permanent injunction, E.Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc., 756 F.2d 1525, 1527 n.1 (11th Cir. 1985), where there is no triable issue of fact, the court may convert a preliminary injunction to a permanent injunction without an evidentiary hearing. United States v. McGee, 714 F.2d 607, 613 (6th Cir. 1983); Socialist Workers Party v. Illinois State Bd. of Elections, 566 F.2d 586, 587 (7th Cir. 1977), aff'd other grounds, 440 U.S. 173 (1979); United States v. Byrd, 609 F.2d 1204, 1208-09 (7th Cir. 1979).  The Court issuing the permanent injunction must "recast" its findings of fact and conclusions of law in terms of the permanent injunction standard, which is essentially the same as the standard for a preliminary injunction. Ciba-Geigy Corp. v. Bolar Pharm. Co., 747 F.2d 844, 847 (3d Cir. 1984).  The exception is that the plaintiff must show actual, rather than likely, success on the merits. Amoco Production Co. v. Village of Gambell, Alaska, 480 U.S. 531, 546 n.12 (1987).

Because IRC §§ 7407 and 7408 set forth the criteria for injunctive relief, the United States need only meet those criteria, without reference to the traditional equitable factors, for an injunction to issue under these sections.  See United States v. Estate Pres. Servs., 202 F.3d 1093, 1098 (9th Cir. 2000) ("The traditional requirements for equitable relief need not be satisfied since Section 7408 expressly authorizes the issuance of an injunction.").

To obtain a permanent injunction under IRC § 7407 the United States must show: (1) that the defendant is an "income tax return preparer" within the meaning of IRC § 7701(a)(36); (2) that he engaged in conduct described in § 7407(b)(1)(A)-(D); and (3) that injunctive relief is appropriate to prevent the recurrence of such conduct.  United States v. Fernandez, 2005 WL 1332312, *1 (M.D. Fla. May 4, 2005)(citing United States v. Ernst & Whinney, 735 F.2d 1296, 1303 (11th Cir. 1984)).

IRC § 7408(a) gives the district courts power to issue an injunction under IRC § 7408(b) if

it finds that 1) the person has engaged in any conduct subject to penalty under section 6700 . . . or section 6701 . . . and 2) the injunctive relief is appropriate to prevent recurrence of such conduct. See United States v. Ratfield, et al., 2004 WL 3174420, *12 (S.D. Fla. Nov. 30, 2004).

IRC § 7402 gives the district courts power to issue injunctions as may be necessary or appropriate for the enforcement of the internal revenue laws of the United States. Ernst at 1300. Congress has expressly stated that injunctive relief under IRC § 7402(a) is "in addition to and not exclusive of any and all other remedies." See IRC § 7402(a). In Ernst the Eleventh Circuit held, however, that for an injunction to issue under IRC § 7402(a) the United States must meet the traditional equitable standard for an injunction. Ernst at 1301 ("the decision to issue an injunction under § 7402(a) is governed by the traditional factors shaping the . . . use of the equitable remedy."). Those factors are: (1) the likelihood of continuing irreparable injury to the United States, (2) the harm to the United States without the injunction outweighs any harm to the defendant if a permanent injunction is entered, (3) success on the merits of the case, and (4) the public interest favors entry of a permanent injunction. United States v. Fernandez, 2005 WL 1332312, *1 (M.D. Fla. May 4, 2005); See also Keener v. Convergys Corp., 342 F.3d 1264, 1269 (11th Cir. 2003) (citing Newman v. Alabama, 683 F.2d 1312, 1319 (11th Cir. 1982)).

### III.    Findings of Fact and Conclusions of Law

Plaintiff presented support for its motion for preliminary injunction in the form of case law and supporting declarations (Dkts. 2-4), which Defendants failed to rebut during the preliminary injunction hearing. When Plaintiff moved for summary judgment converting the preliminary injunction into a permanent injunction, Defendants were again afforded the opportunity to proffer rebuttal evidence; however, Defendants failed to take advantage of this opportunity as well.

Defendants' response does not delineate proposed findings that are in dispute (Dkts. 145 and 146). Rather, as noted above, Defendants simply reiterate arguments  (Dkts. 19, 146, 148 and 149) that this and other Courts have found to be frivolous and without legal merit (Dkt. 152).

In support of its Motion, Plaintiff filed twenty-one (21) proposed findings of fact.  Evidence support for the findings of fact exists in the declarations and attachments submitted in support of Plaintiff's Motion for Preliminary Injunction (Dkt. 4), which are not controverted by Defendants, and in the evidentiary (Dkt. 23) and contempt hearings (Dkts. 34-40) held before the Court.  Because Defendants failed to rebut or contradict Plaintiff's evidence or to raise a single genuine issue of material fact, the Undersigned recommends that  Plaintiff's twenty-one proposed findings of fact, as modified below, be accepted as true.  See  United States v. Raymond, 228 F.3d 804, 809 (11th Cir. 2000) (citing Wang v. Lake Maxinhall Estates, Inc., 531 F.2d 832, 835 n.10 (7th Cir. 1976) for the proposition that at the summary judgment stage uncontradicted affidavits are taken as true).

**Findings of Fact**:

1.  Defendants, Carel E. "Chad" Prater ("Prater"),  individually  and through his associated  entities  Aero  Investments,  Goldcoast  Enterprises,  Goldencoast Enterprises, Bartholomew Enterprises, C.A.P. Enterprises, Tax Informer Enterprises, Family Values International, Tax Escape Service, New Found Freedom ("associated entities") and Richard Cantwell ("Cantwell") promote abusive tax schemes based on the so-called "§ 861 argument," a meritless position that domestic income is not subject to the federal income tax, and make other false and fraudulent representations regarding tax law.  Defendants promote their schemes through seminars, newspaper advertisements, a book and a website, and charge clients for products and services

related to their abusive tax schemes.

2.      Prater, Cantwell, and the associated entities promote, and Prater and the associated

entities file, putative legal documents, which are actually nullities but which Prater

calls "*nihil dicit* judgments" against the IRS, by which judgments Defendants falsely

claim to bar the IRS from collecting taxes from their clients.

3.      Prater and Cantwell falsely advise clients, individually and through seminars and

written materials, to cease filing federal income tax returns (IRS Forms 1040) and

paying federal income tax.

4.      Prater, Cantwell, and the associated entities sell sham trusts, called Unincorporated

Business Trust Organizations ("UBTOs") or Unincorporated Personal Trusts

("UPTs"), and falsely advise their clients that by placing the clients' assets and

income into these trusts the clients can avoid federal income tax.

5.      Prater, Cantwell, and the associated entities promote, and Prater and the associated

entities set up, limited liability corporations ("LLCs") structured to obscure their

clients' identities.  Prater, Cantwell, and the associated entities falsely instruct their

clients that by moving the clients' assets and income between these LLCs and the

UBTOs the clients can avoid federal income tax.

6.      Prater and the associated entities prepare and file federal income tax returns (IRS

Forms 1040), falsely claiming that their clients have no taxable income and are not

liable for federal income tax.  Prater and his staff fail to sign their own names to

these returns and fail to provide their identifying numbers, in violation of 26 U.S.C.

§ 6695.

7. Prater and his associated entities prepare and file amended federal income tax returns (IRS Forms 1040X), falsely claiming that their clients' previous returns were filed in error and requesting a refund of paid taxes. Prater and his staff fail to sign their own names to these returns and fail to provide their identifying numbers to them.

8. Prater and his associated entities prepare and submit to their clients' employers Employee's Withholding Allowance Certificates (IRS Forms W-4) and statements in lieu of IRS Form W-4 falsely claiming that their clients are exempt from withholding tax.

9. The returns, amended returns, and W-4s that Prater and his associated entities have prepared are based on an unrealistic position, the § 861 argument, which concludes that Defendants' clients are not liable for tax on domestic-source income, and which yields a gross understatement of his clients' tax liability.

10. Prater misleads his clients and the IRS by claiming that he is qualified to represent clients before the IRS; Prater induces his clients to execute Power-of-Attorney and Declaration of Representation Forms (IRS Forms 2848), purportedly granting him authority to represent them by falsely asserting that he is his clients' full-time employee.

11. Prater interferes with the administration of the internal revenue laws by attempting to block IRS examination and collection efforts through frivolous correspondence and mock legal documents.

12. Prater and Cantwell have continued to promote their abusive tax schemes even after learning that they are under IRS investigation and after the IRS executed a search

warrant on their business premises.  Cantwell has stated his intention to continue his abusive tax activity after learning that he is under IRS investigation for promoting abusive tax schemes.

13.     Absent this permanent injunction, Prater and Cantwell will continue to promote the abusive tax scheme.

14.     If this injunction if not granted, the United States will suffer irreparable harm because Prater advises his clients not to file returns, to file returns falsely claiming no income, to file amended returns demanding a refund of paid taxes, to stop their employers from withholding taxes from their paychecks, and to hide their income from the IRS in sham trusts and LLCs.  Further, substantial resources of the United States are expended reviewing and dealing with Prater-prepared returns, amended returns, and correspondence.

15.     The § 861 argument is frivolous and without merit.[1]  Prater and Cantwell knew or should have known that their representations regarding the § 861 argument and the tax benefits to be derived from participation in their scheme are false because: (1) the § 861 argument is frivolous on its face; (2) numerous judicial decisions reject the § 861 argument and abusive trusts such as Prater's; (3) the IRS has issued numerous public documents explaining the invalidity of th § 861 argument; (4) Prater and Cantwell kept copies of an IRS public notice regarding frivolous tax arguments and a press article describing injunction actions against others who promoted schemes

---

[1]

  See United States v. Rosile, No. 8:02-cv-466-T-24MSS, 2002 WL 1760861, at *2 (M.D. Fla. June 10, 2002); United States v. Bossett, No. 8:01-cv-2154-T-17TBM, 2002 WL 1058105, at *3 (M.D. Fla. Mar. 26, 2002).

similar to his own; and, (5) Prater holds himself out (that is, "palms himself off") as an expert in tax law.

16.    Prater and his associated entities have filed with the IRS documents, including frivolous W-4 Forms, 1040 Forms, 1040X Forms, that relate to a material tax matter and that Prater knew would, if accepted, result in an understatement of tax liability. Prater's submission of these forms and other frivolous documents to the IRS has substantially interfered with the administration of the internal revenue laws.

17.    Prater and the associated entities have substantially interfered with the administration of the tax laws by pressuring employers to cease withholding taxes from their clients' wages and by pressuring others to reject IRS collection efforts.

18.    In sum, the record reveals that Prater, Cantwell, and the associated entities have engaged in conduct in violation of IRC §§ 6700, 6694, 6695, and 6701. Therefore, the United States has prevailed on the merits. Further, the records demonstrates that Prater, Cantwell, and the associated entities will continue to violate IRC §§ 6700, 6694, 6695, and 6701 absent the entry of a permanent injunction.

19.    This injunction is tailored to prevent Prater, Cantwell, and the associated entities from causing further injury and from further violating the law. Thus, the threatened injury to the United States outweighs any injury an injunction might cause to Defendants.

20.    The public interest is served by granting this injunction. This permanent injunction helps stem the spread of, and protects the public from, Defendants' frivolous arguments and fraudulent tax schemes.

21.     The United States has no adequate remedy at law to stop Defendants' abusive tax schemes.

Findings 12, 13, 18 and 19 warrant additional discussion, as they are the findings that have the most impact on the Court's decision whether to convert the preliminary injunction into a permanent one.

<u>Findings 12 and 13</u>

With respect to Findings 12 and 13, the record is replete with evidence that Defendants "continued to promote their abusive tax schemes even after learning that they are under IRS investigation . . ." and that "absent this permanent injunction, Prater and Cantwell will continue to promote the abusive tax scheme." For example, Plaintiff provided evidence that even after the IRS executed a search warrant on Prater's business premises on March 7, 2002, Prater held a seminar promoting his tax scheme on October 10, 2002 (Dkt. 3 at 2, n.4 (citing to the Matthews Decl. ¶ 24, Exs. 5-6)). Further, evidence can be found in the affidavits, declaration and documentary exhibits (Dkts. 34-40 and 55-56) submitted by Plaintiff in support of its Motion to Hold Defendants in Contempt (Dkt. 30) much of which was used by the Court when granting Plaintiff's Motion to Hold Defendants in Contempt (Dkts. 67 (Report and Recommendation) and 75 (Order adopting Report and Recommendation)). Specifically, Plaintiff submitted evidence that even after the issuance of the preliminary injunction, Defendants continued to promote their tax avoidances schemes via their newsletter and also continued to send letters and other documents to the IRS on behalf of clients. (Dkt. 67, pp. 4-9 (internal citations omitted)). After an evidentiary hearing and review of the documentation in support provided by both parties, the Undersigned issued a Report and Recommendation, which was accepted by the District Court Judge, that Defendants (with the exception of Mr. Cantwell, whom the Undersigned found was not involved in the allegedly

contemptuous conduct at issue (Dkt. 67 at 12)), through certain conduct, had violated the December 19, 2002, preliminary injunction and should be held in contempt.

As discussed in detail below, Defendants, even after the entry of the preliminary injunction, persist in filing documents in this case asserting the validity of the § 861 argument and contesting the jurisdiction of the Court. These documents indicate that Defendants have not accepted the findings by this (and other courts) that the tax scheme they promote is unlawful.

<u>Finding 18</u>

As noted above, under IRC §§ 7402, 7407 and 7408 the standards for the issuance of a preliminary injunction do not change when a permanent injunction is sought, with the exception that under § 7402 Plaintiff must demonstrate actual as opposed to the "substantial likelihood of success" on the merits. If the District Court accepts Plaintiff's proposed findings of fact as true, and grants summary judgment, Plaintiff will have succeeded on the merits of this case. Because Defendants failed to provide the Court with any specific facts showing that there is a genuine issue for trial in this case, the Undersigned recommends that the District Court grant summary judgment.

Plaintiff's success on the merits in combination with Defendants' demonstrated unwillingness to abide by the terms of the preliminary injunction leads to the incontrovertible conclusion that the issuance of a permanent injunction is appropriate, and in fact necessary, in this case. Evidence that Defendants continue to engage in behavior that led the Government to file this suit is provided by the findings of the Special Master assigned to this case that were filed on December 5, 2003, as well as the affidavits and documents referenced above that were filed in support of Plaintiff's Motion to Hold Defendants in Contempt (Dkt. 30). The necessity for a permanent injunction becomes especially clear upon review of Defendants' post-preliminary injunction filings in opposition to Plaintiff's Motion (Dkt. 145) and Defendants' Demand for

Dismissal and Removal of Temporary Injunction (Dkt. 148) in which Defendants, undaunted and undeterred by the issuance of the preliminary injunction and other court sanctions, continue to assert their frivolous arguments about the legality of the tax code and jurisdiction of this Court.

Finding 19

By law, an injunction order must be narrowly tailored and cannot be impermissibly vague. Federal Rule of Civil Procedure, 65(d) provides, in pertinent part that, "[e]very order granting an injunction . . . shall be specific in terms; [and] shall describe in reasonable detail . . . the act or acts sought to be restrained...."  Fed.R.Civ.P. 65(d).  Under this rule, "an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed." Id. (citing Hughey v. JMS Dev., 78 F.3d 1523, 1531 (11th Cir. 1996)).  The language recommended below for inclusion in the permanent injunction mirrors the language included in the preliminary injunction (Dkt. 23) and, thus, has already been determined to be narrowly tailored.

The recommended language is straightforward and designed specifically and carefully to prevent Defendants from continuing to violate the law and from causing further injury.  As of the filing of the request for preliminary injunction, Defendants had already cost the United States roughly $18 million in tax losses (Dkt 3 at 13, n.81(citing to the Matthews Decl.¶ 20)) and further caused the United States to devote substantial time and resources to detecting Defendants' tax schemes and prosecuting Defendants for engaging in this fraudulent conduct (Dkt 3 at 13, n.81(citing to the Matthews Decl.¶ 11)).  In addition, as noted above, there is no indication on the record thus far that Defendants have acknowledged that the tax scheme they promote is unlawful. Thus, the continuing injury to the United States outweighs any injury a permanent injunction might cause to Defendants.

### IV.     Conclusion

Accordingly, the Undersigned reports and recommends that the District Court **GRANT** the United States' motion for summary judgment converting the preliminary injunction into a permanent injunction and award the United States its costs.  Based on this recommendation, the Undersigned suggests that District Court incorporate the following language into any final order in this case:

Pursuant to IRC §§ 7402, 7407, and 7408, Prater and Cantwell, both individually and doing business through any entity, their representatives, agents, servants, employees, attorneys, and those persons in active concert or participation with them who receive actual notice of this order are enjoined from:

a.      Engaging in activity subject to penalty under IRC § 6701, including preparing and/or assisting in the preparation of a document related to a matter material to the internal revenue laws that includes a position that they know will result in an understatement of tax liability;

b.      Advocating, through seminars, websites, consultations, and the preparation of income, employment, and corporate tax returns and claims for refund, the false and frivolous position that United States-source income is nontaxable (the "§ 861 argument");

c.      Filing so-called judgments *nihil dicit* or default judgments against the IRS, the United States of America, or any agency, department, or instrumentality of the United States of America;

d.      Selling any type of trust, limited liability corporation, or similar arrangement, which advocates noncompliance with the income tax laws or tax evasion, misrepresents the

tax savings realized by using the arrangement, or conceals the ownership or receipt of income;

e.     Representing, offering to represent, or claiming an ability to represent any other person in any tax matter before the IRS or any court;

f.     Corresponding with, or assisting in the preparation of any correspondence or other documents to be sent to the IRS on behalf of any other person in exchange for payment (including for those who paid for any other tax-related services);

g.     Preparing or assisting in the preparation of any tax-related document to be sent to any other person in exchange for payment (including for those who paid for any other tax-related services);

h.     Preparing or assisting in the preparation of federal tax returns for any other person or entity;

i.     Promoting, marketing, organizing, or selling any plan or arrangement regarding the excludibility of income that they know or have reason to know is false or fraudulent as to any material matter.  Accordingly, Defendants shall remove from their website(s) all abusive-tax-scheme promotional materials and materials designed to incite or induce others imminently to violate the tax laws;

j.     Engaging, directly or indirectly, in any other activity subject to penalty under IRC §§ 6694, 6695, 6700, or 6701; and

k.     Engaging in other similar conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws.

Further, the Court **ORDERS** that Prater and his associated entities display prominently on

the first page of their website(s) a complete copy of this permanent injunction; certify to the Court within eleven days of this permanent injunction that they have complied with this provision; and maintain their website(s) for one year with a complete copy of this permanent injunction so displayed throughout that time.

Further, the Court **ORDERS** that the United States may conduct post-judgment discovery to monitor Defendants' compliance with this permanent injunction.

Further, the Court **ORDERS** that Prater and his associated entities pay the United States its costs, including the cost of the Special Master.  The United States is to submit a bill of costs for consideration and approval by the Court.

**RESPECTFULLY RECOMMENDED** in Tampa, Florida, on this 30th day of August 2005.

_____
MARY S. SCRIVEN
United States Magistrate Judge

## NOTICE TO THE PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report by **September 12, 2005**, shall bar an aggrieved party from attacking the factual findings on appeal.